UNITED STATES DISTRICT COURT

Northern District of California

JOSE A. VELAZQUEZ,

                Plaintiff,

  v.

ERIC HOLDER,

                Defendants.

_____/

No. C 09-01146 MEJ

**ORDER RE: PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. ## 8, 11)**

## I. INTRODUCTION

Plaintiff Jose Alcarez Velazquez brings this case against Defendants United States Attorney General Eric Holder and the United States Citizenship and Immigration Services ("USCIS"), seeking a Court order compelling USCIS to grant Plaintiff's I-130 petition, thereby allowing his adopted son to live permanently in the United States. The matter is presently before the Court on cross motions for summary judgment. (Dkt. ## 8, 11.) Pursuant to Civil Local Rule 7-1(b), the Court shall decide these motions without oral argument, and hereby VACATES the December 17, 2009 hearing. After consideration of the parties' papers, relevant legal authority, and good cause appearing, the Court issues the following opinion.

## II. BACKGROUND

The facts of this case are essentially undisputed. Plaintiff is a naturalized United States citizen and the maternal uncle of Elidier Rojas-Alcarez ("Elidier"). (Certified Administrative Record ("CAR") at 45-46, 207.) Elidier was born on January 1, 1990, in Mexico. (CAR at 208.) In 1996, while he was away from home, Elidier's parents and three of his four siblings were shot to death at their family home. (CAR at 45, 47, 192, 194.) For the next eight years, Elidier and his remaining living sibling lived with their grandparents in Mexico. (CAR at 45.) On September 1,

2004, Elidier moved to the United States to live with Plaintiff and Plaintiff's wife. (CAR at 45-46.)

On July 13, 2005, Plaintiff and his wife filed a petition with the California Department of Social Services ("CDSS") to adopt Elidier. (CAR at 136.) Pursuant to California Family Code section 8807(a), before an adoption can be finalized by the California Superior Court, the receiving agency must investigate the proposed adoption and prepare a report within 180 days of receiving the application. However, the agency may request additional time from the Superior Court to file the adoption report. Cal. Fam. Code § 8807(c). In Elidier's case, the CDSS requested and received an extension due to a delay by the United States Department of Justice in returning Elidier's live scan results.[1] (CAR at 38.)

On March 21, 2006, the CDSS filed its report with the Superior Court of California, County of Sonoma, recommending that the court grant Plaintiff's adoption petition. (CAR at 45-49.) In a letter dated April 13, 2006, a senior adoption specialist from the CDSS requested that the court issue a *nunc pro tunc* order to allow the adoption to be finalized prior to Elidier's sixteenth birthday. (CAR 128.) The specialist stated that, but for the live scan delay by the Department of Justice, the report would have been submitted prior to his sixteenth birthday. (CAR 128.) On April 19, 2006, the Superior Court issued a *nunc pro tunc* order granting the adoption petition, effective as of December 30, 2005, the day before Elidier's sixteenth birthday. (CAR at 79-80.)

On January 27, 2008, Plaintiff filed a Form I-130, Petition for Alien Relative, requesting that USCIS categorize Elidier as Plaintiff's child, thereby allowing him to obtain lawful permanent resident status. (CAR at 204-05.) USCIS denied the petition on August 30, 2008, finding that Elidier did not qualify as a "child" because he was over the age of sixteen years old when the adoption was finalized. (CAR at 22-23.) In its decision, USCIS stated that it did not consider the Superior Court's *nunc pro tunc* order effective for immigration purposes, citing a previous United States Board of Immigration Appeals (the "BIA") case, *In Re Cariaga*, 15 I. & N. Dec. 716 (BIA 1976), that held that "a retroactive adoption does not confer benefits under the Act when the actual

---

[1] Although the record does not appear to contain the Superior Court's order granting an extension of time, neither party disputes that an extension of time was granted.

adoption did not take place prior to the limiting age." (CAR 23.)

On September 10, 2008, Plaintiff appealed the USCIS decision to the BIA, claiming that USCIS had "no legal basis for disregarding the State of California's nunc pro tunc order of adoption . . . ." (CAR at 111.) The BIA affirmed the USCIS decision on February 12, 2009, finding that, despite the *nunc pro tunc* order, the adoptive relationship was not created until Elidier was over the age of sixteen. (CAR at 2.)

On March 16, 2009, Plaintiff filed the present Complaint under 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act) and 5 U.S.C. § 701 (the Administrative Procedure Act). Plaintiff seeks a judgment declaring that the BIA's decision to deny the I-130 petition is arbitrary, capricious, and contrary to law.

On August 4, 2009, Defendant filed its Motion for Summary Judgment. (Dkt. #8.) On September 28, 2009, Plaintiff filed its Motion for Summary Judgment. (Dkt. #11.) On October 29, 2009, the parties filed responses, (Dkt. ## 18, 19). Plaintiff subsequently filed a reply on November 13, 2009, (Dkt. #20.), and Defendants filed a reply on December 3, 2009 (Dkt. #24).

### III.  LEGAL STANDARD

**A.  Summary Judgment**

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson*, 477 U.S. at 247-48. The non-moving party has the burden of

identifying, with reasonable particularity, the evidence that precludes summary judgment. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). Thus, it is not the task of the court to scour the record in search of a genuine issue of triable fact. *Id*. If the non-moving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323. An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute might affect the case's outcome. *See Anderson*, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved in favor of either party." *Id*. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *See id*. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50 (internal citations omitted).

**B.     The Administrative Procedure Act ("APA")**

Under the APA, the agency's decision may be reversed only if the Court finds it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The standard is "highly deferential, presuming the agency action to be valid." *Kern County Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006) (quoting *Indep. Acceptance Co. v. California*, 204 F.3d 1247, 1251 (9th Cir. 2000)). An agency decision should be upheld even if it is "of less than ideal clarity," so long as "the agency's path may reasonably be discerned." *Nw. Motorcycle Assoc. v. U.S. Dept. of Agric.*, 18 F.3d 1468, 1478 (9th Cir. 1994) (citing *Motor Vehicle Mfrs. Ass'n v. State Farm Mutual Ins. Co.*, 463 U.S. 29, 43 (1983)).

**C.     The Immigration and Nationality Act**

The Immigration and Nationality Act (the "INA") permits a United States citizen to file an immigrant petition on behalf of his/her child. *See* 8 U.S.C. § 1154(a)(1)(A)(i). The statutory definition of "child" includes "a child adopted while under the age of sixteen years if the child has been in the legal custody of, and has resided with, the adopting parent or parents for at least two years." 8 U.S.C. § 1101(b)(1)(E)(i). Defendants' regulation requires that "the adoption took place before the beneficiary's sixteenth birthday," and that "[a] copy of the adoption decree, issued by the

4

civil authorities, must accompany the petition." 8 C.F.R. § 204.2(d)(2)(vii).

## IV. DISCUSSION

The critical issue in this case is whether Elidier was, or was not, adopted by Plaintiff before his sixteenth birthday. In their motion for summary judgment, Defendants argue that the BIA's decision cannot be construed as arbitrary or capricious because it was bound by its own relevant and reasonable precedent. Specifically, Defendants argue that the BIA's precedent establishes that it cannot make an exception to the age requirement by following a *nunc pro tunc* order entered for the sole purpose of manipulating the date the adoption was final for immigration purposes.

In his motion for summary judgment, Plaintiff raises several arguments: (1) the *nunc pro tunc* order issued by the California Superior Court should be accepted as valid; (2) not accepting the *nunc pro tunc* order undermines the State of California's jurisdiction over family law matters; (3) the decision by the BIA is arbitrary and capricious, clearly erroneous, an abuse of discretion, and otherwise not in accordance with the law because USCIS and the BIA accept *nunc pro tunc* orders in other immigration matters, but refuse to do so in the instant case; (4) *nunc pro tunc* orders are used by federal courts to correct errors made by judges in immigration matters; and (5) the regulations do not preclude *nunc pro tunc* orders or adoptions commenced while the child is under the age of sixteen.

Because the Court finds that Defendants improperly disregarded a valid state court order, it shall focus its discussion on that issue.

The Supreme Court has long held that while the "scope of a federal right is, of course, a federal question, . . . that does not mean that its content is not to be determined by state, rather than federal law." *De Sylva v. Ballentine*, 351 U.S. 570, 580 (1956). More specifically, the Supreme Court has recognized that "the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004). Thus, the decision to look to state law to determine questions of family relations is applicable to immigration law. *Minyansan v. Gonzales*, 401 F.3d 1069, 1077 (9th Cir. 2005) ("Our decision to look to state law is consistent with our

practice in other areas of federal law generally, and immigration law specifically.").

In *Minasyan*, the Ninth Circuit considered whether the petitioner, who had entered the United States with his family when he was eight, was a derivative citizen of the United States pursuant to a now defunct provision of the INA, § 321(a), 8 U.S.C. § 1432(a)(3) (1999), *repealed by* Pub.L. 106-395, Title I, § 103(a), Oct. 30, 2000, 114 Stat. 1632. Under § 321(a), a child born outside of the United States of alien parents automatically became a citizen of the United States upon fulfillment of certain conditions.[2] The question before the Ninth Circuit was whether there had been a "legal separation" of the petitioner's parents, such that he automatically became a citizen through his mother, who had become a citizen through naturalization. *Minasyan*, 401 F.3d at 1072, 76. Although the petitioner's parents had been separated since 1993 (prior to his eighteenth birthday), his mother did not file an action for dissolution of the marriage until 1999, and the superior court did not grant the dissolution until 2001, after his eighteenth birthday. In its decision below, the BIA found that the petitioner failed to establish citizenship under § 321(a) because he was over the age of eighteen at the time the separation was final in 2001. *Minasyan*, 401 F.3d at 1073-74.

In reviewing the BIA's decision, the Ninth Circuit held that because the language of the INA did not expressly define "legal separation," it must look to California state law to determine its

---

[2]Under former INA § 321(a), 8 U.S.C. § 1432, a child born outside of the United States of alien parents automatically becomes a citizen of the United States upon fulfillment of the following conditions:
(1) The naturalization of both parents; or
(2) The naturalization of the surviving parent if one of the parents is deceased; or
(3) The naturalization of the parent having legal custody of the child when there has been a legal separation of the parents or the naturalization of the mother if the child was born out of wedlock and the paternity of the child has not been established by legitimation; and if
(4) Such naturalization takes place while such child is unmarried and under the age of eighteen years; and
(5) Such child is residing in the United States pursuant to a lawful admission for permanent residence at the time of the naturalization of the parent last naturalized under clause (1) of this subsection, or the parent naturalized under clause (2) or (3) of this subsection, or thereafter begins to reside permanently in the United States while under the age of eighteen years.

6

1    meaning. *Id.* at 1076-77.  In making this determination, the court noted that "[s]o strong is our

2    deference to state law in this area that we have recognized a 'domestic relations exception' that

3    'divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at

4    1077 (internal quotations and citations omitted).  Using California law to define legal separation, the

5    court found that the petitioner's parents had been separated prior to his eighteenth birthday, even

6    though the dissolution was not final until 2001. *Id.* at 1079.

7          Here, the California Superior Court issued its order on April 19, 2006, granting the adoption

8    petition *nunc pro tunc*, effective as of December 30, 2005, the day before Elidier's sixteenth

9    birthday.  Defendants do not claim that the order is invalid; instead, they claim that the agency "was

10   not permitted to make an exception to the relevant statute and regulation by following a *nunc pro*

11   *tunc* order entered for the sole purpose of manipulating the date the adoption was final for

12   immigration purposes." (Def. Mot. at 8:21-23.)  Defendants argue that the state *nunc pro tunc* order

13   conflicts with federal law, and in such circumstances, federal law prevails.  Specifically, Defendants

14   argue that USCIS took no steps that impact on the validity of the order for family law purposes, and

15   that the date on which the adoption was made legal was indeed December 30, 2005.  Defendants

16   contend that the only question USCIS considered is whether the adoption meets the requirements,

17   for immigration purposes, established under 8 U.S.C. § 1101(b)(1)(E).  In support of their argument,

18   Defendants cite to a footnote in *Minasyan*, in which the Ninth Circuit stated that "in some

19   circumstances, the rule of the state with jurisdiction might not control." *Minasyan*, 401 F.3d at 1077

20   n.14.

21         The Court finds Defendants' argument unavailing.  As noted above, the statute defines

22   "child" as including "a child adopted while under the age of sixteen years," 8 U.S.C. §

23   1101(b)(1)(E)(I), and does not rule out *nunc pro tunc* or retroactive adoptions.  Even Defendants'

24   regulation, which requires that "the adoption took place before the beneficiary's sixteenth birthday,"

25   8 C.F.R. § 204.2(d)(2)(vii), is silent on the issue of *nunc pro tunc* or retroactive adoptions.  Further,

26   there is a strong deference to state law in the area of child custody. *Minasyan*, 401 F.3d at 1077.  In

27   short, Defendants' decision that "a *nunc pro tunc* order cannot adjust the date a child was adopted

28

**UNITED STATES DISTRICT COURT**
**For the Northern District of California**

7

for immigration purposes" is not authorized either by the statute or Defendants' own regulation interpreting the statute.

Defendants also cite to *Singh v. Mukasey*, 533 F.3d 1103 (9th Cir. 2008). In *Singh*, the Ninth Circuit held that "a *nunc pro tunc* order 'may be used only where necessary to correct a clear mistake and prevent injustice. It does not imply the ability to alter the substance of that which actually transpired or to backdate events to serve some other purpose.'" *Id.* at 1110 (quoting *United States v. Sumner*, 226 F.3d 1005, 1009-10 (9th Cir. 2000)). Rather, the use of a *nunc pro tunc* order "is limited to making the record reflect what the . . . court actually intended to do at an earlier date, but which it did not sufficiently express or did not accomplish due to some error or inadvertence." *Id.* (internal quotations omitted). Defendants contend that the California Superior Court intended to make a substantive change affecting Plaintiff's rights and not to remedy an error. As such, Defendants argue that this Court should not use the order as a basis for any decision.

The Court finds *Singh* inapplicable to the case at bar. In that case, the petitioner requested that the Ninth Circuit issue an order *nunc pro tunc* for purposes of having his petition considered under a law that was no longer in effect. *Id.* at 1110. While *Singh* discusses the ability of a court to issue a *nunc pro tunc* order, it says nothing about the ability of a court in a separate jurisdiction to do the same. And, most importantly, *Singh* provides no authority for the notion that the BIA can disregard the state court's order.

Defendants also cite to Supreme Court and Ninth Circuit authority regarding the federal government's sovereign power over conditions of naturalization. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1023 (9th Cir. 2009) (states may not enact a law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."); *Chirac v. Chirac's Lessee*, 15 U.S. 259, 269 (1817) ("That the power of naturalization is exclusively in congress does not seem to be, and certainly ought not to be, controverted."); *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("over no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens."); *Takahashi v. Fish and Game Comm'n*, 334 U.S. 410, 419 (1948) ("The Federal Government has broad constitutional powers in determining

what aliens shall be admitted . . . and the terms and conditions of their naturalization . . . under the Constitution the states are granted no such powers."). However, none of these cases provide that the federal government has the authority to disregard a valid state court order that establishes the date of an adoption. In fact, Defendants cite no authority, and this Court is aware of none, supporting the proposition that a federal agency may disregard a valid state court order.

The only authority cited in Defendants' papers that speaks directly to the issue of a *nunc pro tunc* order issued by a state court is neither statute, regulation, nor court opinion, but two decisions of the Board of Immigration Appeals. (Defs. Mot. at 7-8.) "While decisions of the BIA are binding on officers and employees of the Department of Homeland Security, that body is nothing more than an administrative court created by the Department of Justice principally to review decisions of immigration judges." *Messina v. USCIS*, No. Civ.A. 05CV73409DT, WL 374564, at *5 (E.D. Mich. Feb. 16, 2006) (citing 8 C.F.R. § 1003.1(b), (g)). Further, while the BIA may interpret the Immigration and Nationality Act and implementing regulations, it has no law- or rule-making authority. *Id.*

Specifically, Defendants first cite to *Matter of Cariaga*, 15 I & N Dec. 716 (BIA 1976). In *Cariaga,* the petitioner was an American citizen who had raised the beneficiary, a native of Mexico, since the boy's Mexican father brought him to the United States at the age of two. *Id.* at 716. Shortly before the father died, when the boy was seven, he signed an affidavit consenting to the boy's adoption by the petitioner. When the boy was 19, the petitioner obtained an order from an Iowa state court declaring the boy to be adopted by the petitioner, retroactive to the date of the father's affidavit. *Id.* at 717. The BIA chose not to recognize the retroactive effect of the adoption and denied the petition, reasoning that "[t]hrough the imposition of an age restriction on the creation of the adoptive relationship, Congress has attempted to distinguish between bona fide adoptions, in which a child has been made a part of a family unit, and spurious adoptions, effected in order to circumvent statutory restrictions . . .. The act of adoption must occur before the child attains the age

9

of fourteen."[3] *Id*.

Defendants also cite *In re Drigo*, 18 I. & N. Dec. 223 (BIA 1982). In *Drigo*, the Territorial Court of the Virgin Islands had entered a *nunc pro tunc* order adjusting the adoption date so that the beneficiary would have fallen under the statutory definition of "child." *Id.* at 225. The BIA held that the age limitation must be strictly enforced, and that it should not follow the Virgin Islands court order asserting the date of adoption for immigration purposes. *Id.*

While these cases are factually similar to the instant matter, they are not binding authority. Moreover, they do not explain the Court's main concern - the legal authority by which the BIA, a creation of the Department of Justice, may disregard a court order. The BIA framed the issue in these cases as whether it should consider the retroactive effect the state courts had given the adoptions. However, the BIA neglected to ask the more important question, namely, whether the BIA or any agency may disregard an order, issued by a court of competent jurisdiction, that is lawful on its face.

Defendants' decision in the instant matter likewise offers no legal authority, other than the two administrative cases discussed above, for disregarding the *nunc pro tunc* order issued by the California Superior Court. (CAR 2, 22-23.) If Defendants doubted the validity or correctness of the "*nunc pro tunc*" designation, they should have sought relief from the court that issued the order. *See Messina*, 2006 WL 37564, at *6 ("Court orders are presumed valid, and it is beyond the province of an administrative agency to declare an order "unacceptable" and act as though the order did not exist. Defendant may challenge the validity of a court order in the proper forum, but it may not on its own motion declare the order invalid.") Defendants, like any government entity or individual, "[are] duty bound to follow the orders of validly constituted courts and may not reserve the right to follow only those orders with which [they] agree[]." *Id.*

Pursuant to the California Superior Court's order, Elidier's adoption was finalized on December 30, 2005, the day before his sixteenth birthday. As Defendants have failed to show that

---

[3] At the time *Cariaga* was decided, the statutory definition of "child" included a child "adopted while under the age of fourteen." *See id.* at 717.

the order is invalid, the Court finds that their disregard of the order was arbitrary, capricious, an abuse of discretion, and not in accordance with law.

///

## V.  CONCLUSION

Based on the foregoing, the Court hereby <u>DENIES</u> Defendants' motion for summary judgment and <u>GRANTS</u> Plaintiff's motion for summary judgment.  Pursuant to 5 U.S.C. § 706(1), which authorizes the Court to "compel agency action unlawfully withheld," the Court <u>ORDERS</u> USCIS to grant Plaintiff's I-130 "Petition for Alien Relative" forthwith.

**IT IS SO ORDERED.**

Dated: December 9, 2009

_____
Maria-Elena James
Chief United States Magistrate Judge