UNITED STATES DISTRICT COURT

Northern District of California

| | |
|---|---|
| JOSE A. VELAZQUEZ,<br><br>              Plaintiff,<br>   v.<br>ERIC HOLDER, U.S. ATTORNEY GENERAL; and UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES,<br><br>              Defendants.<br>_____/ | No. C 09-01146 MEJ<br><br>**ORDER RE PLAINTIFF'S MOTION FOR ATTORNEY FEES (DKT. #34)** |

## I. INTRODUCTION

Before the Court is Plaintiff Jose Velazquez's ("Plaintiff") motion for attorney fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). (Dkt. #34.) On August 30, 2010, the Court found this matter suitable for disposition without a hearing and vacated the September 2, 2010 hearing. (Dkt. #46.) Based on the parties' papers, relevant legal authority, and good cause appearing, the Court ORDERS as follows.

## II. BACKGROUND

Plaintiff seeks attorney fees from Defendants Attorney General Eric Holder and United States Citizenship and Immigration Services ("USCIS") (collectively, "Defendants"), following this Court's grant of summary judgment in his favor. (*Order Re: Parties' Cross-Motions for Summary Judgment*, Dkt. #25 ("Order")). A recitation of facts from the Order are as follows. Plaintiff is a naturalized United States citizen and the maternal uncle of Elidier Rojas-Alcarez ("Elidier"). After Elidier's family was killed in Mexico, he moved to the United States at the age of fourteen to live with Plaintiff and his wife, naturalized American citizens. On July 13, 2005, Plaintiff and his wife filed a petition with the California Department of Social Services ("CDSS") to adopt Elidier. Pursuant to California Family Code section 8807(a), before an adoption can be finalized by the

California Superior Court, the receiving agency must investigate the proposed adoption and prepare a report within 180 days of receiving the application. However, the agency may request additional time from the Superior Court to file the adoption report. Cal. Fam. Code § 8807(c). In Elidier's case, the CDSS requested and received an extension due to a delay by the United States Department of Justice in returning Elidier's live scan results.

On March 21, 2006, the CDSS filed its report with the Superior Court of California, County of Sonoma, recommending that the court grant Plaintiff's adoption petition. In a letter dated April 13, 2006, a senior adoption specialist from the CDSS requested that the court issue a *nunc pro tunc* order to allow the adoption to be finalized prior to Elidier's sixteenth birthday. The specialist stated that, but for the live scan delay by the Department of Justice, the report would have been submitted prior to his sixteenth birthday. On April 19, 2006, the Superior Court issued a *nunc pro tunc* order granting the adoption petition, effective as of December 30, 2005, the day before Elidier's sixteenth birthday.

On January 27, 2008, Plaintiff filed a Form I-130, Petition for Alien Relative, requesting that USCIS categorize Elidier as Plaintiff's child, thereby allowing him to obtain lawful permanent resident status. USCIS denied the petition on August 30, 2008, finding that Elidier did not qualify as a "child" because he was over the age of sixteen years old when the adoption was finalized. In its decision, USCIS stated that it did not consider the Superior Court's *nunc pro tunc* order effective for immigration purposes, citing a previous United States Board of Immigration Appeals (the "BIA") case, *In Re Cariaga*, 15 I. & N. Dec. 716 (BIA 1976), which held that "a retroactive adoption does not confer benefits under the Act when the actual adoption did not take place prior to the limiting age."

On September 10, 2008, Plaintiff appealed the USCIS decision to the BIA, claiming that USCIS had "no legal basis for disregarding the State of California's nunc pro tunc order of adoption . . . ." The BIA affirmed the USCIS decision on February 12, 2009, finding that, despite the *nunc pro tunc* order, the adoptive relationship was not created until Elidier was over the age of sixteen.

On March 16, 2009, Plaintiff filed the present Complaint under 28 U.S.C. § 2201 (the

2

1 Federal Declaratory Judgment Act) and 5 U.S.C. § 701 (the Administrative Procedure Act).  Plaintiff
2 sought a judgment declaring that the BIA's decision to deny the I-130 petition was arbitrary,
3 capricious, and contrary to law.

4       On December 9, 2009, the Court granted summary judgment in favor of Plaintiff, finding that
5 Defendants' disregard of a valid state court order was arbitrary, capricious, an abuse of discretion,
6 and contrary to law, and that Elidier's adoption was in fact finalized on December 30, 2005, the day
7 before his sixteenth birthday.  The Court thus ordered Defendants to grant Plaintiff's I-130 "Petition
8 for Alien Relative" forthwith.

9       On March 9, 2010 Plaintiff filed his first motion seeking attorney fees under the EAJA (Dkt.
10 #30), and filed the instant amended motion on March 22, 2010 (Dkt. #34).  On June 24, 2010,
11 Defendants filed an opposition (Dkt. #42), and on August 17, 2010, Plaintiff filed a reply (Dkt. #44).

12 **III. DISCUSSION**

13       Plaintiff argues that an award of attorney fees is appropriate in this case and is authorized by
14 the EAJA.  (Pl.'s Mot. 3:8, Dkt. #34.)  Plaintiff is requesting attorney fees at a rate of $300 per hour.
15 *Id.* at 13:12.  Plaintiff requests a total of $52,696.31 in attorney fees and costs as the reasonable fees
16 and expenses eligible for an award pursuant to the EAJA.  *Id.* at 8:24-8:7, Ex. 3.

17       In response, Defendants contend that their conduct was reasonable under the circumstances
18 because the law was in flux regarding *nunc pro tunc* adoption orders and therefore no attorney fees
19 should be awarded.  (Defs.' Opp'n 4:12-5:9, Dkt. #42.)  Defendants argue that if Plaintiff is to
20 receive attorney fees, the fees must be limited to the $125 per hour statutory cap established by the
21 EAJA.  (Defs.' Opp'n 7:17-20, Dkt. #42.)

22 **A.    Legal Standard**

23       The EAJA provides that a court shall award fees and any costs incurred by the prevailing
24 party in a civil action, unless it finds that the position of the United States was substantially justified
25 or that special circumstances make an award unjust.  28 U.S.C.§ 2412(d)(1)(A).  A party eligible to
26 receive an award of attorney fees under the EAJA must be the prevailing party who received a final
27 judgment in the civil action.  28 U.S.C. § 2412(d)(2)(H).

28

Under the EAJA, fees and other expenses that are recoverable include reasonable expenses of expert witnesses, reasonable costs of any study, analysis, report, test, or project found by the court to be necessary for the prevailing party's case, and reasonable attorney fees. 28 U.S.C. § 2412(d)(2)(A). The attorney fees shall not be awarded in excess of $125 per hour unless the court determines that a higher fee is justified by an increase in the cost of living, or that a special factor exists, such as the limited availability of qualified attorneys for the proceedings involved. *Id.* Additionally, under the EAJA, a party can recover fees and costs including the $350 filing fee of the prevailing party's civil action. 28 U.S.C. § 2412(a)(2) (internal quotations and citations omitted).

**B.    Application to the Case at Bar**

Plaintiff asserts that the Court should award attorney fees because he is the prevailing party and Defendants lacked a substantial justification for refusing to give legal effect to a valid *nunc pro tunc* adoption order issued by the California Superior Court. (Pl.'s Mot. 4:9-20, 6:12-13, Dkt. #34.) Plaintiff also argues that the amount of attorney fees should be $300 per hour because his attorneys had specialized knowledge and skill in the practice of immigration and family law, which Plaintiff argues was instrumental to his case. *Id.* at 11:1-6. If the Court does not find the enhanced fee of $300 per hour reasonable, then Plaintiff argues the fee should be $183.25 per hour, reflecting the appropriate adjustment for the increased cost of living due to inflation. (Pl.'s Mot. 10:7-8, Dkt. #34.)

In response, Defendants argue that Plaintiff's attorneys should not receive any more than the statutory maximum of $125 per hour because counsel has not shown that they are entitled to an enhanced fee. (Defs.' Opp'n 10:2-4, Dkt. #42.) Defendants further argue that if attorney fees are awarded above the statutory cap for inflation, the correct rate according to the Ninth Circuit should be $172.24 per hour for work performed in 2009. (Defs.' Opp'n 10:5-7, Dkt. #42.) Defendants also contend that Plaintiff's request for attorney fees contains unreasonable and excessive fees and that the Court should only award fees it finds reasonable. (Defs.' Opp'n 5:14-25, Dkt. #42.)

1.    <u>Plaintiff Is Entitled to Attorney Fees Under EAJA</u>

For the Court to award costs and attorney fees under the EAJA, it must find that (1) Plaintiff

is the prevailing party who timely filed; (2) Defendants have not met their burden of showing that their positions were substantially justified or special circumstances are present to make the award unjust; and (3) the requested costs and attorney fees are reasonable. *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002). Additionally, the EAJA requires that in order for a prevailing party to be eligible to receive attorney fees, the party must be an individual "whose net worth did not exceed $2,000,000 at the time the civil action was filed . . . ." 28 U.S.C. § 2412(d)(2)(B).

Here, there is no dispute that Plaintiff is the prevailing party, and Defendants do not contend that his motion is untimely. Accordingly, the Court need only consider the final two elements.

Plaintiff argues that Defendants' refusal to give legal effect to a valid state court order was not substantially justified. (Pl.'s Mot. 6:12-13, Dkt. #34.) Plaintiff contends that Defendants' conduct of not recognizing the *nunc pro tunc* order is not supported by any legal authority, and he claims that Defendants cannot outright refuse to obey an order from a court with jurisdiction over adoption and family law matters. (Pl.'s Mot. 6:13-20, Dkt. #34.) Plaintiff further argues that Defendants' position during litigation was not justified because they cannot disregard valid state court orders on the basis that they were *nunc pro tunc* before the child's sixteenth birthday. (Pl.'s Mot. 7:11-15, Dkt. #34.) Plaintiff maintains that Defendants cannot rely on their own administrative precedent when federal courts have ruled that the USCIS cannot disregard *nunc pro tunc* orders. (Pl.'s Mot. 7:11-23, Dkt. #34.) Additionally, Plaintiff asserts that the Court need not consider Defendants' justifications for their litigation position if it finds there was no justification for the misconduct that gave rise to this litigation. (Pl.'s Mot. 7:25-27 n.1, Dkt. #34.)

In response, Defendants argue that their denial of Plaintiff's I-130 petition was substantially justified. (Defs.' Opp'n 3:7-8, Dkt. #42.) The *nunc pro tunc* order adjusted the date of adoption to the day before Elidier's sixteenth birthday so Plaintiff could claim Elidier as a child in order to obtain an immigration benefit. (Defs.' Opp'n 3:9-13, Dkt. #42.) According to Defendants, Congress intended for the BIA to rely on its own precedent as authority in considering I-130 petitions and, based on its precedent, Defendants found that Elidier did not qualify as a child under such a petition. (Defs.' Opp'n 3:14-20, 4:7-8, Dkt. #42.) Because they relied on precedent from

5

their own agency, Defendants argue they were substantially justified in denying Plaintiff's I-130 petition. (Defs.' Opp'n 4:7-8, Dkt. #42.) Defendants also maintain that their positions before the Court during litigation were substantially justified because no court in the Ninth Circuit had addressed whether the agency must strictly construe the definition of child under the I-130 petition statutes. (Defs.' Opp'n 4:9-13, Dkt. #42.) Defendants further argue that because the law was unclear or in flux, their position taken in litigation was justified. (Defs.' Opp'n 5:7-11, Dkt. #42.)

Proving substantial justification is a two-step process. 28 U.S.C. § 2412 (d)(2)(D). First, Defendants must show that they agency's action or failure to act which gave rise to the litigation was substantially justified. *Id.* Second, Defendants must also show that the position taken in the civil action was substantially justified. *Id.* The inquiry into whether or not the government had substantial justification must be found on both positions. *Kali v. Bowen*, 854 F.2d 329, 332 (9th Cir. 1988).

On December 9, 2009, this Court issued an order granting summary judgment in favor of Plaintiff on his complaint for declaratory relief after Defendants denied his I-130 petition. (Order, 11:6-9, Dkt. #25.) Although Congress has established that a decision against Defendants should not create a presumption that their position was not substantially justified, *Scarborough v. Principi*, 541 U.S. 401, 415 (2004), the Court's December 9 Order clearly shows that Defendants' position which gave rise to litigation was not substantially justified.

In its Order, the Court found that the statute the agency relies upon for I-130 petitions does not specifically rule out consideration of *nunc pro tunc* orders. (Order, 7:21-26, Dkt. #25.) The Court further found that although there is case law that gives power to the federal government to regulate immigration and naturalization, none of those cases establish that the federal government has the authority to disregard a valid state court order. *Id.* at 8:19-9:5. Further, Defendants failed to cite any authority, and the Court is aware of none, which supports the notion that a federal agency may disregard a valid state court order. *Id.* at 9:4-5. The Court found that the *nunc pro tunc* order made Elidier's adoption final on December 30, 2005, which was the day before his sixteenth birthday. *Id.* at 10-24-25. Thus, Defendants' disregard of this order, with no authority to do so, was

6

1 an action by Defendants that was arbitrary, capricious, an abuse of discretion and contrary to the
2 law. (Order, 10:25-11:2, Dkt. #25.)

3      Based on these findings, the Court finds here that Defendants were not substantially justified
4 in their position which gave rise to the litigation. As stated above, Defendants must show they were
5 substantially justified on both positions in order for Plaintiff to not be eligible for attorney fees under
6 EAJA. *Kali*, 854 F.2d at 332. The Court finds that Defendants are unable to make this showing, and
7 are thus entitled to an award of attorney fees and costs.

8      2.    <u>The Attorney Fee Award</u>

9      As to the amount of fees, counsel for Plaintiff argues that they are entitled to $300 per hour
10 because a special factor exists in this case. (Pl.'s Mot. 13:13-17, Dkt. #34.) Specifically, Plaintiff
11 claims that practicing immigration law and being able to litigate before the federal courts requires
12 specialized knowledge and skill. *Id.* at 11:8-9, 11:24-28. Plaintiff argues that this specialized
13 knowledge and skill were crucial to his case because there are nuances and intricacies of the *nunc*
14 *pro tunc* adoption order and I-130 process. *Id.* at 12:6-11. Plaintiff also asserts that attorneys with
15 the necessary skill and knowledge of federal court and immigration law were not available to take
16 this case at the statutory rate of $125 per hour. *Id.* at 11:27-12:1. To support this argument, Plaintiff
17 provides declarations from his attorneys touting the requisite skill and knowledge they necessarily
18 had to possess in order to take on this case. (Pl.'s Mot. Ex. 6, Ex. 7, Dkt. # 34.) Plaintiff also argues
19 that the requested rate of $300 per hour is below the prevailing market rate of $350 per hour that
20 attorneys with his counsel's level of experience charge at most law firms. (Pl.'s Mot. 13:12-14, Dkt.
21 #34.) In the alternative, Plaintiff contends that if the Court awards the statutory rate, it should be
22 adjusted for the costs of inflation, the appropriate amount being $183.25 per hour. *Id.* at 10:7-8.
23 Plaintiffs also contend that the paralegal working on the case is entitled to $25.00 per hour for her
24 work in his case. *Id.* at Ex. 6.

25      In response, Defendants maintain that counsel has not demonstrated that they are entitled to
26 the enhanced rate of $300 per hour. (Defs.' Opp'n 7:17-18, Dkt. #42.) Defendants argue that
27 immigration attorneys are not by category alone entitled to an enhanced fee, even though
28

7

immigration law could be considered a specialized skill. *Id.* at 8:5-11. Defendants contend that knowledge of the nuances and intricacies which Plaintiff claims were necessary to the litigation could be attained by any competent attorney through diligent research. *Id.* at 8:12-19. Additionally, Defendants argue that the main issue in Plaintiff's case rested on whether or not an agency should follow the *nunc pro tunc* order as a valid adoption order, which is an issue any attorney can address through diligent research and review of the record. *Id.* at 8:23-26. Defendants also assert that Plaintiff has not met his burden to show that no other attorney would take this case at the statutory rate or that there was a shortage of those who would take the case. *Id.* at 9:8-21. Defendants argue that if the Court is to award attorney fees, the proper adjustment for inflation, referring to the Ninth Circuit's website, is $172.24 for work performed in 2009. *Id.* at 10:5-7.

The EAJA provides that when a court awards attorney fees to a party, it shall not be in excess of $125 per hour unless the court determines that a higher fee is justified by a special factor that is present, such as the limited availability of qualified attorneys for the proceedings involved, or an increase in the cost of living. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit uses the factors set forth by the United States Supreme Court to establish what constitutes a special factor under the EAJA. *Pirus v. Bowen*, 869 F.2d 536, 541-42 (9th Cir. 1989). The factors the Court should consider in determining a special factor exists to justify an enhanced fee are: 1) whether the attorney possesses distinctive knowledge or specialized skill; 2) whether that knowledge and skill were necessary to the litigation; and 3) whether similar knowledge and skill could not be obtained elsewhere at the statutory rate. *Id. (*citing *Pierce v. Underwood*, 487 U.S. 552, 572 (1988)).

      *a.      Distinctive Knowledge and Specialized Skills*

Plaintiff submitted declarations from his attorneys describing their expertise in the field of immigration and adoption law. (Pl.'s Mot. Ex. 6, Ex. 7, Dkt. #34.) Maureen McSorley lists extensive experience with naturalization applications, family and employment based applications for permanent residency, as well as internal adoption and guardianship matters. (Pl.'s Mot. Ex. 6 ¶¶ 1, 2, Dkt. #34.) McSorley also states that her associate attorney, Julie Cyphers, specializes in family based immigration. *Id.* at ¶ 10. Maria Matan also lists experience with immigration law and was a

8

certified specialist in that field while working on Plaintiff's case. (Pl.'s Mot. Ex 7 ¶ 3, Dkt. #34.) Matan has worked on many matters involving *nunc pro tunc* orders and has experience in proceedings before the BIA. *Id.* at ¶¶ 5, 8.

Although having distinctive knowledge and specialized skill is a requirement for fee enhancement, it is not enough by itself to justify an enhanced hourly rate under EAJA. *Nadarajah v. Holder*, 569 F.3d 906, 913 (9th Cir. 2009) (internal quotations and citations omitted). The Ninth Circuit has also determined that the practice of immigration law is not a per se classification as a specialty similar to that of practicing patent law. *Thangaraja v. Gonzales*, 428 F.3d 870, 876 (9th Cir. 2005). The Ninth Circuit has not awarded enhanced fees under the EAJA unless the distinctive knowledge and specialized skill were necessary to the litigation in question. *Id*

Here, the Court finds that Plaintiff's attorneys possess special expertise in immigration and adoption cases; however, the Court must determine if those specific skills were needed to litigate Plaintiff's case.

>  b.   *Distinctive Knowledge And Skill Are Not Needed for This Litigation*

Plaintiff claims that his attorneys' knowledge of immigration and family law were instrumental to the success of his case. (Pl.'s Mot. 11:2-4, Dkt. #34.) Plaintiff also contends that most immigration attorneys practice only before federal agencies, whereas his attorneys were very familiar with federal court litigation and immigration, both of which were needed for this litigation. *Id.* at 11:24-28.

In response, Defendants claim that Plaintiff's case did not center on the statutory and precedential scheme of immigration law, but rather upon the question of whether or not Elidier was adopted before his sixteenth birthday. (Defs.' Opp'n 8:20-22, Dkt. #42.) Defendants further argue that the issue of whether or not a valid *nunc pro tunc* order adjusts the date of adoption is a straightforward issue that any attorney could address through diligent research. *Id.* at 8:23-26.

The Court agrees with Defendants and finds that Plaintiff's attorneys are not entitled to an enhanced fee based on their specialized skill, as that skill was not necessary to Plaintiff's case. Plaintiff's claim was based on the filing of an I-130 petition for a family relative and Defendants'

9

denial of the petition because they did not follow a valid *nunc pro tunc* order. (Pl.'s Mot. 7:11-23, Dkt. #34.) The Court found in its order granting Plaintiff summary judgment that this case was focused on the issue of whether or not Elidier was adopted before his sixteenth birthday. (Order, 5:3-4, Dkt. #25.) Therefore, the Court finds that this issue is not so embedded in immigration law that it requires Plaintiff's attorneys' specialized skill. The Ninth Circuit recognizes awarding enhanced fees in specific situations where the "knowledge of foreign cultures or of particular, esoteric nooks and crannies of immigration law . . . [was] needed to give the alien a fair shot at prevailing." *Nadarajah*, 569 F.3d at 913. Plaintiff's claim is simply not one of the nature where his attorneys needed to navigate the nooks and crannies of immigration law for him to succeed.

Therefore, Plaintiff is not entitled to the enhanced fee rate of $300 per hour because his claim does not meet the special factors necessary to justify such an enhanced rate.

### c.  *Hourly Rate Awarded to Plaintiff Adjusted for Cost of Living*

The Court must next determine the reasonable hourly rate for counsel's services under the EAJA. The statutory rate is $125 per hour; however, the EAJA allows a court to enhance the statutory maximum of $125 per hour for an increase in the cost of living due to inflation. 28 U.S.C. § 2412(d)(2)(A). The Ninth Circuit has established that this increase can be calculated "by multiplying the $125 statutory rate by the annual average consumer price index figure for all urban consumers." *Thangaraja v. Gonzales*, 428 F.3d 870, 876-77 (9th Cir. 2005). Pursuant to *Thangaraja* and the authority under the EAJA, the Ninth Circuit has established statutory maximums for work performed in the relevant years for which Plaintiff seeks fees. Statutory Maximum Rates Under the Equal Access to Justice Act, http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039 (last visited December 16, 2010). The statutory maximum adjusted for the cost of living due to inflation for 2009 is $172.24 per hour and for the first half of 2010 is $174.64 per hour. *Id.*

Plaintiff argues the proper calculation for inflation involves using the Consumer Price Index for All Urban Consumers ("CPI-U") in March 2006,imply when the statutory maximum was increased to $125 per hour. (Pl.'s Mot. 9:24-10:2, Dkt. #34.) By using this base rate, Plaintiff claims that the

10

appropriate adjusted maximum is $183.25 per hour.[1]  (Pl.'s Mot. 10:6-8, Dkt. #34.)

Defendants argue in response that the appropriate rate for all of Plaintiff's attorneys should be within the statutory maximum established by the Ninth Circuit at a rate of $172.24 for work performed in 2009.

The Court finds that, pursuant to the Ninth Circuit's website establishing the adjusted statutory maximums, counsel for Plaintiff is entitled to a rate of $172.24 per hour for the work performed in 2009 and a rate of $174.64 per hour for work performed in 2010, as they are not entitled to the requested hourly rate of $300 per hour.  However, the Court recognizes that Plaintiff had established a lower fee for the associate attorney working on the matter and higher fee for more experienced counsel in his fee request.  For equitable purposes, the Court finds it appropriate to award the cost of living calculations Plaintiff determined at $183.25 per hour for McSorley and Matan, and award the Ninth Circuit's adjusted statutory maximum rates at $172.24 per hour for the associate attorney.  Further, the Court finds it appropriate to award the paralegal the requested rate of $25 per hour, as Defendants do not contest this request.

### d. Number Of Hours and Costs Reasonably Expended

The hours that can be included at the EAJA rate that was adjusted for the cost of living are those hours that have been reasonably expended in the litigation.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  "The party seeking an award of fees should submit evidence supporting the hours worked . . . .  Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Id.*  The documentation of hours should be maintained in records in such a way that will allow a reviewing court to easily identify the hours expended for the litigation.  *Id.* at 437.  If a court finds the party's request for fees to be poorly documented, then the court can reduce the hours requested.  *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1121 (9th Cir. 2000).  Courts also have

---

[1] Plaintiff's calculation of the CPI-U was based on the Bureau of Labor Statistics website using the following formula: $125 (current statutory rate) x (current CPI-U) / (March 1996 CPI-U). The January 2010 CPI-U figure is $224.239; the index figure for March 1996 is $152.9. The formula, with the appropriate numbers included, is $125 x 1.466 = $183.25. (Pl.'s Mot. Ex 7 ¶ 13, Dkt. #34.)

1  discretion to reduce the amount of hours billed in the event that entries are block-billed, as a court
2  will be unable to determine whether all time in the entry was reasonably expended. *Mendez v.*
3  *County of San Bernardino,* 540 F.3d 1109, 1128-29 (9th Cir. 2008).

4  Additionally, "purely clerical or secretarial tasks should not be billed at a paralegal rate,
5  regardless of who performs them." *Missouri v. Jenkins*, 491 U.S. 274, 288 n.10 (1989). Clerical
6  work such as copying and scanning, mailing, and organizing and tabbing exhibits are not tasks that
7  should be billed to clients; rather, they should be covered or subsumed by an attorney's hourly rate,
8  just as are the costs of overhead. *Leuzinger v. County of Lake*, C 06-0398 SBA, 2009 WL 839056,
9  at *4 (N.D. Cal. March 30, 2009). Other clerical tasks that cannot be billed, even at paralegal rates,
10 include filing and updating the calendar. *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d
11 1095, 1102 (N.D. Cal. 2008). However, when those tasks are billed together with tasks which
12 require document review or other legal analysis, only a partial reduction is proper. *Leuzinger*, 2009
13 WL 839056, at *5.

14 It is within the court's discretion to reduce a fee award based upon careful review. While the
15 court should give a concise but clear explanation of the ultimate fee award, it is not required to set
16 forth a detailed analysis of the fee request. *In re Smith*, 586 F.3d 1169, 1174 (9th Cir. 2009). While
17 the court has authority to make an across-the-board percentage cut in the number of hours claimed,
18 rather than meticulously discuss each time entry, a reduction more substantial than ten percent will
19 require clear explanation. *Id*. (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.
20 2008)).

21 Here, Plaintiff requests 34.05 hours for work performed by McSorley, 127.75 hours for work
22 performed by Matan, 18.25 hours for work performed by McSorley's associate attorney, and 4.45
23 hours for work performed by the paralegal. (Pl.'s Mot. Ex. 6, Ex. 7, Dkt. #34.) Plaintiff has
24 provided time sheets for all three attorneys as well as the time log for the paralegal. *Id.*
25 Additionally, Plaintiff requests an award of $650.26 for the costs expended in this litigation,
26 specifically a filing fee of $350, postage amounting to $50.26, and copy costs of $250. *Id.* at Ex. 3.
27 In response, Defendants claim that Plaintiff's request for fees is unreasonable and excessive.
28

1  (Defs.' Opp'n 5:26, Dkt. #42.) Defendants argue that the reimbursement for time spent filing and
2  other clerical tasks should not be billed at the hourly rate of the paralegal but rather should be
3  subsumed by the firm's overhead. *Id.* at 6:1-4. Defendants further argue that Plaintiff's request
4  contains a number of billing entries that are either vague or considered block billing and are
5  therefore lacking the detail necessary for the Court to award the full number of hours sought. *Id.* at
6  6:13-21.

7  The Court has carefully reviewed counsel's time entries. Because there are several block-
8  billed entries and the Court cannot clearly determine the time spent on each item and whether that
9  time spent is reasonable, the Court will reduce the total number of hours for each attorney by two
10 percent. Therefore, Plaintiff is entitled to an award of 33.37 hours for work performed by McSorley,
11 125.2 hours for work performed by Matan, and 17.89 hours for work performed by Cyphers. The
12 Court finds that certain entries by the paralegal are clerical tasks and therefore will reduce the hours
13 sought by the paralegal by ten percent. Thus, Plaintiff is entitled to 4.0 hours for work performed by
14 the paralegal. Additionally, the Court finds that pursuant to the EAJA, Plaintiff can recover the
15 filing fee of $350, postage of $50.26, and copy costs of $250, for a total of $650.26, as reasonable
16 costs expended in the litigation. 28 U.S.C. § 2412(a)(2) .

17  *e.    Summary Of Award*

18  Plaintiff is entitled to attorney fees and costs as follows:

| Timekeeper | Hours Reasonably Spent | Reasonable Hourly Rate | Total Fee Award |
|---|---|---|---|
| Maureen McSorley | 33.37 hours | $183.25 | $6,115.05 |
| Maria Matan | 125.2 hours | $183.25 | $22,942.90 |
| Julie Cyphers | 17.89 hours | $172.24 | $3,143.38 |
| Paralegal | 4.0 hours | $25.00 | $100.00 |
| **Total** | | | $32,301.33 |

Additionally, Plaintiff is entitled to costs in the amount of $650.26. Therefore, Plaintiff is entitled to a total award of $32,951.59.

13

## IV. CONCLUSION

Based on the foregoing, the Court GRANTS Plaintiff's request for attorney fees and costs in the amount of $32,951.59.

**IT IS SO ORDERED**

Dated: December 20, 2010

Maria-Elena James
Chief United States Magistrate Judge

UNITED STATES DISTRICT COURT
For the Northern District of California